A89A1709. SOUTHERN TRUST INSURANCE COMPANY v. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY. A89A1710. McDONALD et al. v. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY. A89A1711. BAKER v. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY. A89A1712. COTTON STATES MUTUAL INSURANCE COMPANY v. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY.

(391 SE2d 793)

BEASLEY, Judge.

These four appeals are from the grant of summary judgment declaring that Georgia Farm Bureau Mutual Insurance Company's contract of insurance with McDonald did not provide coverage.

On June 20, 1985, Georgia Farm Bureau issued a fleet insurance policy to McDonald. The policy was renewed annually and each year the insurer and McDonald did an audit of coverage. In November 1987, McDonald acquired a lowboy trailer for his business of custom application of fertilizer and lime. The trailer was received in trade for an unlisted pull buggy. The audit with respect to the coverage year beginning June 20, 1987, was done in April 1988 and the trailer, which was then owned, was not listed in the "fleet." The audited schedule was signed by McDonald.

The policy provided automatic coverage for "licensed owned automobiles (including trailers)," specifically for coverage of a trailer not described in the policy, if designed for use with a private passenger automobile, if not being used for business purposes with another type automobile and if the named insured or his spouse notified the insurer about the trailer within thirty days of delivery date. On the other hand, the policy expressly excluded coverage for any otherwise covered automobile while it was used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company or while any trailer covered by the policy was used with any automobile owned or hired by the insured and not covered by like insurance in the company.

On June 10, 1988, the lowboy trailer was attached to McDonald's

spreader truck, a policy-listed commercial vehicle, so that McDonald's employee Stewart could pick up and load a tractor. Before the tractor was loaded, the trailer came loose from the towing spreader and hit a pedestrian, Mrs. Baker, pinning her into a culvert and killing her.

Mr. Baker filed suit for the wrongful death of his wife against McDonald, Stewart, and Georgia Farm Bureau as McDonald's liability insurance carrier. The suit was also served on the Bakers' uninsured/underinsured motorist carriers, Southern Trust Insurance Company and Cotton States Mutual Insurance Company, as unnamed party defendants pursuant to OCGA § 33-7-11 (d). Both filed defensive pleadings.

Georgia Farm Bureau sought a judgment against McDonald, Stewart, and Baker declaring that the subject fleet policy did not cover the vehicle or vehicles involved in the collision with Mrs. Baker so that it owed no duty to defend McDonald and Stewart in the wrongful death suit. The latter was stayed pending outcome of the declaratory judgment action. Southern Trust and Cotton States also filed defensive pleadings in the declaratory judgment action and were added as named party defendants.

The trial court concluded that the lowboy trailer which caused Mrs. Baker's death was not covered under McDonald's fleet policy. Southern Trust appeals in Case No. A89A1709, McDonald and Stewart appeal in Case No. A89A1710, Baker appeals in Case No. A89A1711, and Cotton States appeals in Case No. A89A1712.

1. At the threshold, appellants contend that procedural errors precluded the grant of summary judgment: 1) the court erred in failing to strike or dismiss Georgia Farm Bureau's motion for summary judgment because a) it did not contain citations of authority as required by USCR 6.1 (sixteen days later the insurer supplemented the motion to add citations of authority) and b) Georgia Farm Bureau delayed too long in regard to the trial date to file a complying motion for summary judgment in violation of USCR 6.6; 2) the court erred in holding the hearing on the summary judgment motion only fifteen days after the motion was supplemented, depriving them of the right under OCGA § 9-11-56 to thirty days to respond.

Georgia Farm Bureau filed its motion for summary judgment on March 28 along with supporting affidavit and statement of theories of recovery and undisputed material facts. This was served on all parties with notice that the motion would be heard on April 28. Appellants responded and moved to strike and/or dismiss the motion on the bases noted.

At the April 28 hearing, which proceeded on the merits, appellants also reiterated their procedural objections. When appellants argued that they were due thirty days from April 13 to respond to the supplement, the court inquired if they wished a continuance. Appel-

lants expressed concern about delaying the trial, set for the following week. Discussion was had about when the case would actually be tried and the possibility of specially setting it or resetting it. All parties desired not to postpone trial and all appellants in effect rejected the court's offer and joined in urging the court to render its decision on the summary judgment motion as soon as possible.

The original summary judgment motion along with its supporting evidence was served on appellants at least thirty days before the time fixed for the hearing. See OCGA § 9-11-56. Even if the response time was more appropriately computed from the time the motion was "perfected," appellants waived expansion of the time and resetting of the trial by not only rejecting the court's offer but by affirmatively asking the court to move forward with the summary judgment determination. See *Mobley v. Coast House*, 182 Ga. App. 305, 309 (355 SE2d 686) (1987). Parties may not complain of what their own conduct procured or aided in causing. *Dodd v. Dodd*, 224 Ga. 746, 747 (164 SE2d 726) (1968).

2. All appellants contend that the trial court erred in failing to strike as inadmissible hearsay portions of Pettis' affidavit.

The affidavit contains a statement that it is based on personal knowledge. Even if appellants' objections to portions of the affidavit are valid, appellants could not have been harmed by consideration of the entire affidavit because it addressed issuance of the insurance and forwarding of its documentation to the insured. Aside from this affidavit, McDonald had notice of the actual terms of his fleet policy as a matter of law. See Division 3 (a). Furthermore, other circumstances not addressed in this affidavit mandated that the trailer be found excluded from the policy's automatic coverage. See Division 3 (b), (c), (d), and (e). Without harm there can be no reversible error. *Murray v. Stratford*, 181 Ga. App. 592, 593 (1) (353 SE2d 85) (1987).

3. All appellants contend there existed genuine issues of material fact about (a) whether or not McDonald received the policy booklet putting him on notice of the excluding policy provisions; (b) whether or not McDonald properly and timely notified Georgia Farm Bureau via its agent about acquisition of the lowboy trailer; (c) whether or not the agent was negligent in failing to provide coverage for the trailer; (d) whether or not the trailer was a "licensed owned automobile" under the policy; (e) whether or not the trailer was being used for "business purposes" under the policy when it came loose and struck Mrs. Baker; and (f) whether or not the trailer was "designed for use with a private passenger automobile" so as to be covered.

(a) It is undisputed that the fleet policy was issued to McDonald almost three years prior to the Baker fatality. The renewal policy declarations that McDonald did receive, including the one covering the period of the mishap, indicated the actual policy number and that the

declaration should be attached to and become part of the policy. Under such circumstances, McDonald had notice of the existence of the actual policy as a matter of law and his non-receipt or non-possession of the policy would not serve to excuse him from its operative terms. *Georgia Farm &c. Ins. Co. v. Owens*, 178 Ga. App. 446 (343 SE2d 699) (1986).

(b) Construing the evidence favorably for appellants establishes that five days after McDonald acquired the lowboy trailer, Daugherty, who was McDonald's neighbor and the Georgia Farm Bureau agent with whom he did business, was a social guest along with a date in McDonald's home. During the socializing, McDonald mentioned to Daugherty that he (McDonald) had traded with McDonald's date his (McDonald's) "pull buggy" for a lowboy trailer. It is undisputed that the pull buggy had not been listed on the fleet policy, that McDonald made no inquiry or request to Daugherty regarding insurance on the acquired trailer, and that during the visit McDonald and Daugherty had no further discussion regarding the trailer or any conversation whatsoever about insurance. There is no evidence that by this mere reference about the trailer swap to an agent in a social setting, McDonald intended that the comments provide notice to the insurer for the purpose of coverage. Since there was zero indication that insurance coverage was desired, the reference described above raises no issue about notice to the insurer.

(c) Inasmuch as the evidence shows that the agent had no notice of the lowboy trailer for the purpose of insurance coverage, there is no issue requiring jury resolution about agent negligence in not pursuing the trailer's coverage under the policy.

(d) The evidence is undisputed regarding whether or not the trailer was a "licensed owned automobile" for purposes of automatic coverage under the policy. McDonald's uncontradicted deposition testimony was that he had not obtained a license plate for the trailer and there was no evidence that the vehicle was "licensed" in any other manner.

(e) The evidence is also undisputed that at the time of the fatal incident the trailer was being used for business purposes. McDonald's uncontradicted deposition testimony was that the trailer was on its way to a farm to pick up a tractor so that McDonald could perform a job of "putting out land plaster." The mere fact that the tractor had not yet been loaded on the trailer did not change or predate either McDonald's business intention with regard to the transportation of the trailer or the business purpose and function of the trailer itself on that occasion. There was no evidence that McDonald's employee, Stewart, was engaged in any personal rather than business endeavor when the trailer hit Mrs. Baker. This uncontroverted evidence of business purpose also excluded the trailer from automatic coverage.

(f) Although appellants did submit evidence that the trailer might have been "designed for use with a private passenger automobile," it did not create a jury issue. The reason is that even if it was so designed, the trailer was excluded from that aspect of automatic fleet coverage because it was being used for a business purpose with a vehicle which was not a private passenger automobile.

4. All appellants contend that the policy "exclusions" which avoid coverage are void as violative of public policy.

Non-coverage of the trailer itself is not the result of a specific *exclusion* in the policy but rather the trailer's failure to meet the requirements for *automatic inclusion* of liability coverage. There is no claim that the policy would have excluded specific liability coverage for the trailer under the circumstances of the fatal mishap if it had been listed as part of the insured fleet.

Even if the provisions constitute exclusions, "Georgia's compulsory insurance law does not contain an omnibus provision which would require liability insurance under all circumstances and hence would appear to prohibit any and all exclusions. Therefore, in Georgia each exclusion must be evaluated individually." *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335, 338 (1) (n. 6) (329 SE2d 136) (1985).

A substantive evaluation of public policy in regard to the alleged exclusions is not reached, see id. at 340 (1)-341, because the policy was never operative in regard to the trailer. McDonald failed to provide the insurer with any timely notice that he desired the trailer to be covered by the policy.

For this same reason, we need not consider the specified exclusion for the towing automobile of the uninsured trailer. The liability coverage of the towing spreader does not alter Georgia Farm Bureau's non-liability for the trailer.

Appellant Southern Trust cites authority regarding ambiguity in an insurance contract but does not point out how the contract at issue is ambiguous. It is not ambiguous but instead plain and clear. Even if considered ambiguous, construction so as to resolve the ambiguity by application of the legal principles of contract construction would be up to the court and not the jury. *Hearn v. Old Dominion Freight Lines*, 172 Ga. App. 658 (1) (324 SE2d 517) (1984). There is no indication that the court did not perform this function if it deemed the terms ambiguous. Applying the rules, no ambiguity arguably present remains for factfinder resolution.

5. Appellants Southern Trust's and Cotton States' contention that the trial court erred in adding them as named parties to the declaratory judgment action because it would prejudice the jury during trial is rendered moot by the affirmed grant of summary judgment to Georgia Farm Bureau. In argument in this enumeration of error, Southern Trust mentions that it was not validly served with process

in the original wrongful death suit. Even if such issue is appropriately raised in the present action, we do not address that which is merely referred to in brief but not enumerated as error. *Marques v. Myers*, 148 Ga. App. 881 (253 SE2d 262) (1979).

*Judgments affirmed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 7, 1990.

*Anderson & Lanford, William H. Anderson III*, for Southern Trust.

*Bowles & Bowles, Jesse G. Bowles*, for Georgia Farm Bureau.

*Ronnie Joe Lane*, for McDonald & Stewart.

*Charles C. Stewart, Jr., Kenneth L. Hornsby*, for Baker.

*Charles F. Johnson*, for Cotton States.